Ron Oliver, Chairman Pulaski County Election Commission 201 S. Broadway, Suite 360 Little Rock, AR 72201
Dear Mr. Oliver:
This is in response to your request for an opinion on the following questions concerning Act 1078 of 1999:
 1. Are the duties of the Pulaski County Board of Education to be assumed by other entities and the records transferred, as Act 1078 provides, or will the Pulaski County Board of Education continue to perform these duties and maintain the records pursuant to the repealed statutes?
 2. Should Pulaski County continue to hold the annual election for county board of education members as required by Ark. Code Ann. § 6-12-101 (c), which will be repealed effective July 1, 2000?
 3. If Pulaski County should not hold an annual election, should vacancies on the Board of Education be filled pursuant to Ark. Code Ann. § 6-12-101 (g) or will members continue to hold office pursuant to Ark. Code Ann. § 6-12-101 (c), both of which will be repealed effective July 1, 2000?
RESPONSE
It is my opinion that the duties of the Pulaski County Board of Education (hereinafter "County Board" or "Board") are to be assumed by other entities and the records of the Board are to be transferred, as provided by Act 1078 of 1999. Pulaski County should not, in my opinion, hold an annual election for county board of education members after the effective date of Act 1078 (July 1, 2000). Arkansas Code Annotated § 6-12-101
offers no authority after July 1, 2000, for filling vacancies or for holding over after the expiration of a term.
Question 1 — Are the duties of the Pulaski County Board of Education tobe assumed by other entities and the records transferred, as Act 1078provides, or will the Pulaski County Board of Education continue toperform these duties and maintain the records pursuant to the repealedstatutes?
As you note, Act 1078 of 1999 purports to eliminate county boards of education (hereinafter "county boards") and transfer certain powers of those boards to other entities. The Act is effective July 1, 2000. See
Acts 1999, No. 1078, § 92. It amends and repeals numerous statutory provisions, including A.C.A. §§ 6-12-101 through — 111, the general provisions governing county boards of education.[1] These Code sections create the county boards and address such other matters as the boards' membership and organization, election of board members, vacancies, and the boards' powers and duties.
The questions you have posed arise due to Section 90 ofAct 1078 of 1999, which is codified as A.C.A. § 6-12-114 (Supp. 1999). This Code section, which is effective July 1, 2000, in accordance with Act 1078, provides in relevant part as follows:
 (a)(1) Prior to July 1, 2000, all county boards of education, county board of education designees, and county school supervisors shall transfer all records, written or electronic, to either the respective county clerk, respective county quorum court, the State Board of Workforce Education, the State board of Education, or the Department of Education, whichever may be appropriate.
 (2)(A) If a county had a full-time county school supervisor or county board of education designee on January 1, 1999, who was not employed more than fifty percent (50%) of the time in other employment or duties other than as county school supervisor or county board of education designee, then that individual may continue acting as county school supervisor or county board of education designee with all the duties, responsibilities, and rights appertaining until such time that said individual leaves such position.
 (B) If subdivision (a)(2)(A) of this section controls, then the county board of education shall also exist until such time that the office is dissolved under subdivision (a)(2)(A).
 (C) If subdivision (a)(2)(A) of this section controls, it is the intent of the General Assembly that the funding of the county board of education, as it existed on or before January 1, 1999, shall continue
until such time that the office is dissolved under subdivision (a)(2)(A).
A.C.A. 6-12-114 (a) (Supp. 1999) (emphasis added).
You state that Pulaski County did have a full time county board of education designee on January 1, 1999, and that the individual remains in that position.[2] Thus, in accordance with § 6-12-114 (a) (2) (B), the Pulaski County Board of Education "shall also exist." And pursuant to subsection (a) (2) (C), "the funding of [the Board], as it existed on or before January 1, 1999, shall continue." Your first question, regarding the duties of the Board and the transfer of its records, is prompted by these provisions. Your question, essentially, is whether the Pulaski County Board of Education will continue to perform the duties set out in A.C.A. §§ 6-12-101 to 111 (and in other provisions amended or repealed by Act 1078), and whether it will continue to maintain records, notwithstanding the repeal of §§ 6-12-101 through 111 and the required transfer of records under Act 1078, effective July 1, 2000.
The language of § 6-12-114 (a) (Supp. 1999), emphasized above, is ambiguous to say the least. Why would the legislature provide for the continued existence of a county board of education while repealing the laws establishing its membership and its powers and duties? Although the answer to this question is not entirely clear under § 6-12-114, it is my opinion that a county board of education with a full-time supervisor or designee (such as the Pulaski County Board) continues to "exist" simply to ensure the continued service, and funding, of the supervisor or designee. This follows, in my opinion, from a reading of § 6-12-114 (a) (2) as a whole, viewed in the entire context of Act 1078.
It is clear, as an initial matter, that the county board's continued existence is tied to the office of county school supervisor or county board of education designee. In accordance with subsection (a) (2) (B), if subsection (a) (2) (A) controls, i.e., if the supervisor or designee continues in his or her position, then "the county board . . . shall also exist until such time that the office is dissolved under subsection (a) (2) (A)."[3] The county board's continued funding is also specifically tied to the supervisor or designee. If the supervisor or designee continues in his or her position, then "the funding of the county board of education, as it existed on or before January 1, 1999, shall continue. . . ." A.C.A. § 6-12-114 (a) (2) (C) (Supp. 1999). The funding mechanism for the position of supervisor or designee is thus effectively continued through this provision.
The fact that the county board shall simply "exist" is, in my opinion, also indicative of legislative intent regarding the board's efficacy. The word "exist" means "to have being . . . [;] . . . to continue to be[.]"Webster's Seventh New Collegiate Dictionary 291 (1972). The definition also includes "to have being in a specified place or with respect to understood limitations or conditions. . . ." Id. This further suggests that the purpose of the county board's continued existence may be limited. It is also significant to note in this regard that § 6-12-114
(a) contains no language regarding any continued "duties, responsibilities, and rights" of the county board, unlike that pertaining to the county supervisor or the board's designee.
This leads me to conclude that the purpose of the county board's continued existence under Act 1078 of 1999 is to effectuate the General Assembly's intent to continue the position of county school supervisor or county board of education designee. The funding of the supervisor or designee is ensured by continuing the funding of the county board. No provision is made for any continuing powers or duties of the county board. Indeed, Act 1078 repeals the Code sections establishing the county board's general powers and duties. It thus appears that the board has no viability except as necessary to continue the position of supervisor or designee and the funding of that position. I can discern no other purpose for county board's existence, in light of the repeal of A.C.A. §§ 6-12-101
through 111 and the transfer of powers to other entities.
In response, therefore, to your specific question regarding the Pulaski County Board of Education, it is my opinion that the duties of the Board will be assumed by other entities, and that the Board must transfer all records, as provided by Act 1078.
Question 2 — Should Pulaski County continue to hold the annual electionfor county board of education members as required by Ark. Code Ann. §6-12-101 (c), which will be repealed effective July 1, 2000?
In my opinion, the answer to this question is "no." Although, as discussed above, the legislature has stated under Act 1078 of 1999 that a county board such as the Pulaski County Board of Education (having a county board of education designee) shall "exist," there is no authority for holding an election following the repeal of A.C.A. § 6-12-101
(effective July 1, 2000). See Acts 1999, No. 1078, § 5. This may require future legislative clarification or correction. I cannot conclude at this time, however, that an election should be held.
Question 3 — If Pulaski County should not hold an annual election, shouldvacancies on the Board of Education be filled pursuant to Ark. Code Ann.§ 6-12-101 (g) or will members continue to hold office pursuant to Ark.Code Ann. § 6-12-101 (c), both of which will be repealed effective July1, 2000?
Because A.C.A. § 6-12-101 will not be effective following its repeal, it must be concluded that this Code section offers no authority after July 1, 2000, for either filling vacancies or for holding office after the expiration of a term.
I have considered the possibility that Article 6, Section 23, and Article19, Section 5 of the Arkansas Constitution will supply the authority in this instance for filling vacancies and for so-called "holding over," respectively.[4] Upon further review, however, I have concluded that art. 6, § 23 is in all likelihood inapplicable because the members of county boards of education have never been elected at the general election. Cf. Glover v. Henry, 231 Ark. 111, 115, 328 S.W.2d 382 (1959) (concluding that the plan under Ark. Const. amend. 29 for filling vacancies, which contemplates that the successors to the governor's appointees will be elected at the general election, does not apply to the office of school director owing to the fact that "school directors have never been elected at the general election.")
With regard to Article 19, Section 5, it seems clear that this provision is premised upon the assumption that there will be a subsequent election to select the hold-over's successor. But as noted above, although the Pulaski County Board of Education "shall . . . exist" in accordance with Act 1078, it appears that there will be no election for Board member positions after July 1, 2000. Nor can I discern any evidence of legislative intent to subsequently provide for such an election. I believe this distinguishes the County Board situation from those instances where officers have been deemed to lawfully hold over until the General Assembly makes provision for the election of their successors.See Op. Att'y Gen. 97-198 and cases cited therein. The application of art. 19, § 5 to the County Board is thus doubtful, in my opinion. Resort to the courts may be necessary, however, to conclusively resolve this unique issue, in the absence of legislative clarification.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] See Acts 1999, No. 1078, §§ 5-15 (repealer).
[2] The position of "county board of education designee" in Pulaski County is essentially the same as "county school supervisor." The Code sections governing the "county school supervisor" (A.C.A. §§ 6-12-201 — 209 (Repl 1993)) refer to "the county school supervisor, or similar personnel" (see § 6-12-207), thus recognizing that this position may have a different name. Additionally, there are numerous references throughout Title 6 to the county board's "designee." See, e.g., A.C.A. § 6-12-109
(a) (4) (Repl. 1993) (funds to be set aside for the expenses of the board "and of any designee;") § 6-13-620 (6) (Supp. 1999, effective until July 1, 2000) (school board to procure teacher forms from the county board "or the board's designee[;]") § 6-17-911 (a) (Repl. 1993) (state funds to be withheld until the "the county board or the board's designee" have set up their records;") § 6-20-216 (Repl. 1993) (referring to the salaries and expenses of "the county school board designee's office[.]")
[3] The "office" that would be "dissolved" under (a) (2) (A) is clearly the position of county school supervisor or county board of education designee. This office will be dissolved when the "individual leaves such position." Id.
[4] Art. 6, § 23 provides as follows:
 [w]hen any office from any cause may become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have the power to fill the same by granting a commission, which shall expire when the person elected to fill said office, at the next general election, shall be duly qualified.
Art. 19, § 5 states that "[a]ll officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."